**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                      CR 12-412 MCA

OMAR COTA, HENRY SIMENTAL,
ANDRES SABADO, MICHAEL
MCALLISTER,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on *Defendant Marco Jimenez's Amended Motion to Suppress Evidence Obtained as Fruit of an Illegal Title III Wiretap*[1] ("Motion to Suppress"), filed on November 23, 2012, (Doc. 234); *The United States' Response to the Defendants' Amended Motion to Suppress Evidence Obtained From a Title III Wiretap (Doc. 234)* ("Response"), filed on December 31, 2013, (Doc. 269); and *Defendant Marco Jimenez's Reply to the Government's Response to Defendants' Amended Motion to Suppress Evidence Obtained as Fruit of an Illegal Title III Wiretap [Doc. 234]* ("Reply"), filed on January 17, 2013, (Doc. 282). Chief United States District Judge M. Christina Armijo referred the matter to the undersigned to perform legal analysis and recommend to the Court an ultimate disposition of the motion. (Doc. 296).

**I.    Background**

On November 21, 2011, Special Agent Reynaldo Rodriguez of the Drug

---

[1] Defendant Marco Jimenez pleaded guilty on July 12, 2013. (Doc. 409). Chief United States District Judge M. Christina Armijo granted Motions to Join Defendant Marco Jimenez's Motion to Suppress for Defendant Omar Cota, (Doc. 371), Defendant Henry Simental, (Doc. 249), Defendant Andres Sabado, (Doc. 241), and Defendant Michael Mcallister, (Doc. 242).

Enforcement Administration ("DEA") submitted an affidavit in support of an application for an order authorizing the interception of wire communications to and from the cellular telephone number (505) 348-6480 ("Target Telephone 1"). (Docs. 234-1, 234-2, 234-3). The affidavit stated that Target Telephone 1 was used by Raul Simental. (Doc. 234-1 at 4). The DEA began investigating Raul Simental and Octavio Baca-Rodriguez in June 2011; both individuals were suspected of drug trafficking and money laundering. (Doc. 234-1 at 4). Based on the information uncovered in the investigation, Simental, Baca-Rodriguez, and others then unknown were suspected of committing several offenses listed in the affidavit:

    a. Possession with intent to distribute and distribution of a controlled substance (methamphetamine), in violation of 21 U.S.C. § 841;

    b. Use of a communications facility to further the commission of a felony controlled substance offense, in violation of 21 U.S.C. § 843(b);

    c. Conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846;

    d. Continuing criminal enterprise, in violation of 21 U.S.C. § 856;

    e. Maintaining a place for manufacture, distribution, or use of controlled substances, in violation of 21 U.S.C. § 856;

    f. Importation of a controlled substance, in violation of 21 U.S.C. §§ 952(a), 960(a);

    g. Conspiracy to import a controlled substance, in violation of 21 U.S.C. § 963; and

    h. Engaging in monetary transactions involving property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

(Doc. 234-1 at 4-5).

Authorization to intercept the communications over Target Telephone 1 was

requested in order to further several investigative objectives. (*See* Doc. 234-1 at 5-6). These objectives included discovering the nature, extent, and methods of operation of the drug trafficking and money laundering activities of Simental, Baca-Rodriguez, and others then unknown; the identification of other communications facilities being used in support of the drug trafficking and money laundering activities; the locations where controlled substances were stored; the nature and extent of the mechanisms used by Simental, Baca-Rodriguez, and others then unknown to import the controlled substances into New Mexico; and the identities of co-conspirators and suppliers of the controlled substances. (Doc. 234-1 at 5-6).

United States District Judge Judith C. Herrera authorized the interception of communications over Target Telephone 1 on November 21, 2011. (Doc. 269-2). On December 21, 2011, Agent Rodriguez submitted another application for further authorization to intercept wire communications over Target Telephone 1; this application named additional subjects, several of whom were later indicted. (Docs. 269-3, 269-4). Judge Herrera approved this application on December 21, 2011. (Doc. 269-5). On January 5, 2012, Agent Brian Bridgeford submitted an application to intercept the communications of several other telephones, (Docs. 269-6, 269-7); this application was also approved by Judge Herrera. (Doc. 269-8).

On February 28, 2012, Defendants Omar Cota, Henry Simental, Andres Sabado, and Michael Mcallister, along with eleven other individuals, were indicted for using a communications facility to further the commission of a felony controlled substance offense, in violation of 21 U.S.C. § 843(b), and conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. (Doc. 31). Defendants

filed their Motion to Suppress on November 23, 2012; they argue that the interception of wire communications was illegal and all evidence stemming from the wiretaps must be suppressed. (*See* Doc. 234). The Court held a hearing on June 6, 2013 at which Defendants and the Government presented arguments in support of their positions. (Doc. 382).

**II.     Title III**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22, governs electronic eavesdropping by law enforcement officials. To obtain authorization to intercept wire or oral communications, a law enforcement officer must first obtain approval from the Attorney General of the United States or a specially designated attorney general. *See* 18 U.S.C. § 2516(1). After obtaining that approval, the officer must submit a written application to a federal judge. *See* 18 U.S.C. § 2518. Upon receiving and reviewing an application for the interception of wire, oral, or electronic communications, a judge may enter an *ex parte* order approving the interception of such communications if the judge determines that there is probable cause and that it is necessary. 18 U.S.C. § 2518(3). Title III contains a "necessity" requirement that is separate and distinct from the probable cause requirement. *United States v. Castillo-Garcia*, 117 F.3d 1179, 1185 (10th Cir. 1997), overruled on other grounds by *United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002).

**III.    Standard of Review**

Under 18 U.S.C. § 2518,

> any aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that . . . (i) the communication was

> unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a).

The determination by a judge that probable cause exists is treated with great deference. *United States v. Haymond*, 672 F.3d 948, 958 (10th Cir. 2012). The reviewing court considers whether, under the totality of the circumstances, the issuing judge had a substantial basis for determining that probable cause existed. *Id.* at 958-59 (citing *United States v. Renigar*, 613 F.3d 990, 993 (10th Cir. 2010)).

A court reviews the issuing judge's conclusion that the wiretaps were necessary for an abuse of discretion, but examines de novo whether a "full and complete" statement meeting the requirements of 18 U.S.C. § 2518(3)(c) was submitted with an application for a wiretap. *Ramirez-Encarnacion*, 291 F.3d at 1222 n.1; *United States v. Oregon-Cortez*, 244 F. Supp. 2d 1167, 1172 (D. Colo. 2003). Once a wiretap has been authorized, the defendant bears the burden of proving that the wiretap is invalid. *Ramirez-Encarnacion*, 291 F. 3d at 1222. The reviewing court must consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap." *Id.* (internal quotations omitted). The necessity requirement is read "in a common sense fashion." *Id.* (quoting *United States v. Nunez*, 877 F.2d 1470, 1472 (10th Cir. 1989)).

## IV. Analysis

### a. Failure to Establish Probable Cause

Defendants claim that the application and supporting affidavit for an order

authorizing the use of a wiretap failed to demonstrate probable cause.[2]  (Doc. 234 at 7). Specifically, Defendants contend that the affidavit did not contain information that supported a finding that probable cause existed in two ways required by 18 U.S.C. § 2518(3): (1) "particular communications concerning those offenses will be obtained through the interceptions," and (2) "the communication facility sought to be intercepted is being used, or [is] about to be used, in connection with the commission of the specified criminal activity." (Doc. 234 at 7). In their Reply, Defendants clarify that their argument is that "there was no probable cause to believe that the wire communications will concern the specifics of the enumerated offenses including the listed investigative objectives as set forth in the affidavit . . . . There was also no probable cause of a drug trafficking organization."  (Doc. 282 at 4).  The Government asserts that the application and supporting affidavit provided a substantial basis for finding probable cause existed to intercept communications over Target Telephone 1.  (Doc. 269 at 21-30).

An application to intercept wire, oral, or electronic communications must include "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued."  18 U.S.C. § 2518(1)(b).  The applicant's statement of facts must include: (i) details as to the offense that has been or is about to be committed; (ii) a particular description of the nature and location of the facilities from which the communications is to be intercepted; (iii) a particular description of the type of communications sought to be intercepted; and (iv) the identity of the person,

---

[2] Although probable cause and necessity are two separate requirements under the statute, Defendants interweave arguments regarding probable cause and necessity throughout their Motion to Suppress and the Reply.  The briefs also reflect confusion over the proper standards of review.  In this PF&RD, the Court will attempt to discern Defendants' most relevant and developed arguments, but does not necessarily address each claim individually because of the repetitive and confusing way they are presented in the Motion to Suppress and Reply.

if known, committing the offense and whose communications are to be intercepted. 18 U.S.C. § 2518(b).  A judge may authorize the interception of wire, oral, or electronic communications when the statement of facts provides a basis for finding that it is necessary and:

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
> (c) . . .
>
> (d) . . . there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense . . . .

18 U.S.C. § 2518(3).

The judge's determination of probable cause for a wiretap is reviewed under the same standard used for a search warrant.  *United States v. Armendariz*, 922 F.2d 602, 608 (10th Cir. 1990).  Probable cause exists "where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed."  *Berger v. State of New York*, 388 U.S. 41, 55 (1967).  Probable cause is established by the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *Nunez*, 877 F.2d at 1472.  In the context of an application for authorization to wiretap a communication facility, the affidavit may contain information gathered through physical surveillance, statements provided by confidential sources, information obtained by undercover agents, or telephone data connecting the

target telephone to drug trafficking activity.   *United States v. Apodaca*, 820 F.2d 348, 350 n.2 (10th Cir. 1987).

In *Gates*, the Supreme Court quoted *Brinegar v. United States*, 338 U.S. 160, 176 (1949): "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."   *Gates*, 462 U.S. at 231.   A court reviewing a judge's determination of probable cause must ensure that there was a "substantial basis for . . . conclud[ing] that probable cause existed."   *Id.* at 238-39 (alteration in original).

Defendants primarily challenge the affidavit on the basis that it did not state facts sufficient to support a finding that there was probable cause to believe that Simental would use Target Telephone 1 to commit the offenses outlined in the affidavit.   (*See generally*, Docs. 234, 282).   They argue that there was no direct evidence that Simental and Baca-Rodriguez communicated about the methamphetamine transactions over Target Telephone 1 and therefore, there is simply no basis to believe that Simental used Target Telephone 1 to commit the listed offenses.   However, this argument asks the Court to overlook the common sense inferences that a reasonable person could make based on the facts outlined in the affidavit.   *See Gates*, 462 U.S. at 231.

In the application and supporting affidavit, Agent Rodriguez outlined the facts that provided the basis of his belief that an order should be issued that authorized the interception of communications that took place over Target Telephone 1.   (Doc. 234-1). The affidavit explained that a confidential source had met Simental, who told the confidential source that he sold methamphetamine and his source was from Mexico.

8

(Doc. 234-1 at 10). The same confidential source later purchased an ounce of methamphetamine directly from Simental. (Doc. 234-1 at 10). The confidential source also discussed with Simental the possibility of facilitating the purchase of eight ounces of methamphetamine[3] at a later date. (Doc. 234-1 at 10). Some of these conversations occurred in person while other conversations about the transactions took place over Target Telephone 1. (Doc. 234-1 at 11-15). The affidavit describes concrete examples of Simental's use of his telephone to arrange the sale of methamphetamine, which certainly provide probable cause to believe that he is violating 21 U.S.C. § 841 (possession with intent to distribute methamphetamine); 21 U.S.C. § 843(b) (using a communications facility to further commission of a felony controlled substance offense); and 21 U.S.C. § 856 (maintaining a drug-involved premises).

      Defendants also argue that the link between Simental and Baca-Rodriguez, (two individuals involved in "low level, hand to hand buys") was too tenuous to support a finding of probable cause that communications concerning conspiracy to distribute methamphetamine, continuing criminal enterprise, importation of a controlled substance, and money laundering would be intercepted. (*See generally* Docs. 234, 282). Again, this argument does not recognize that the standard for finding probable cause is based on common sense inferences and probabilities assessed from the totality of the circumstances, not irrefutable proof. The affidavit convincingly established that Baca-Rodriguez sold methamphetamine to the confidential source and used his telephone to facilitate the transaction. (*See* Doc. 234-1 at 8-9, 16). The affidavit also

---

[3] Simental was selling an ounce of methamphetamine for $950 – $1,000; eight ounces would therefore be worth approximately $8,000. (Doc. 234-1 at 10).

9

contained information that a reasonable person could believe linked Baca-Rodriguez and Simental, such as observations of the two men together, seventy-five phone calls over the course of approximately two months,[4] and the fact that Baca-Rodriguez used Simental's car to deliver methamphetamine to the confidential source.  (*See* Doc. 234-1 at 9, 16; Doc. 234-2 at 2-5). The affidavit also stated that Simental acknowledged that his source for methamphetamine was "from Mexico," which suggests that at least one other individual was involved in the organization, adding additional support to the contention that Simental and Baca-Rodriguez were involved in a conspiracy to distribute methamphetamine.  (Doc. 234-1 at 10).

    Based on the totality of the circumstances described in the affidavit, Judge Herrera had a substantial basis for finding probable cause that intercepting communications over Target Telephone 1 would provide evidence that Simental, Baca-Rodriguez, and others unknown were committing the offenses listed in the affidavit.   As the Government points out, it is not unreasonable to believe that a subject who "is willing to conduct business over the telephone with one presumed customer on more than a single occasion . . . will conduct business similarly with other customers, partners, or co-conspirators at other times."   (Doc. 269 at 10) (citing *United States v. Errera*, 616 F.Supp. 1145, 1150 (D. Md. 1985).   Moreover, the nature of drug trafficking is such that multiple people are involved, and where there is evidence that the supplier of the drugs is an unknown individual, it is a

---

[4] Defendants argue, in detail, that the affidavit failed to provide a basis for probable cause because it did not use "required" telephone toll data to demonstrate that the interceptions will concern the investigative objectives.  (Doc. 282 at 12; *see generally* Doc. 234). Defendants do not cite legal authority for the proposition that telephone toll data is required to establish probable cause.  In the Tenth Circuit, investigators are required to demonstrate the insufficiency of telephone toll data when establishing the necessity of a wiretap, *see Castillo-Garcia*, 117 F.3d at 1187-88, but the Court has not found any precedent to suggest that this data is required for a showing of probable cause.

reasonable inference to believe that *intercepting* the communications of a known suspect will reveal information about the supplier or other conspirators.

### b. Failure to Establish Necessity

In their Motion to Suppress, Defendants argue that the affidavit failed to show that the interception of communications over Target Telephone 1 was necessary.   (Doc. 234 at 47-53).   Defendants' primary argument was that the affiant demonstrated only a "simple conspiracy between Raul Simental and Octavio Baca-Rodriguez" and therefore, the request to intercept communications over Target Telephone 1 was premature.   (Doc. 234 at 52).   Additionally, Defendants argue that the affidavit did not identify other telephones with which Target Telephone 1 was in contact, thus undercutting the need to authorize interception of communications over Target Telephone 1.   (Doc. 234 at 52; Doc. 282 at 17).   In their Reply, Defendants argue that the affidavit "offers only boilerplate generalizations, and it fails to adequately explain why some [traditional investigative] techniques were abandoned."   (Doc. 282 at 17-28).   The Government contends that Judge Herrera properly exercised her discretion when she found that the application, including the statement of facts in the affidavit, demonstrated necessity. (Doc. 269 at 30-38).

Under 18 U.S.C. § 2518(1)(c), an application to intercept wire, oral, or electronic communications must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."   Before approving the application, a judge must find, on the basis of the statement submitted, that normal investigative procedures have been tried and failed and therefore, the wiretap is necessary.

11

18 U.S.C. § 2518(3)(c).   This requirement is written in the disjunctive, and therefore the government may establish necessity by showing any of the three.   18 U.S.C. § 2518(1)(b).

The affidavit must discuss several categories of normal investigative techniques and offer an explanation as to why they would not be successful or are too dangerous. *Castillo-Garcia*, 117 F.3d at 1187.   The investigative procedures that must be discussed are: standard visual and aural surveillance, questioning and interrogation of witnesses or participants (including the use of grand juries), use of search warrants, infiltration of conspiratorial groups by undercover agents or confidential sources, and pen registers and/or trap and trace devices.   *Id.*   However, the government's burden of showing that these investigative procedures are not likely to succeed or are too dangerous is "not great . . . . Substantial compliance with the statute is all that is required."   *United States v. Carrillo*, 123 F. Supp. 2d 1223, 1233 (D. Colo. 2000).

The validity of the wiretap authorization is reviewed based on the information that was before the issuing judge; the reviewing court should examine the face of the application and supporting affidavit to determine if the facts set forth were "minimally adequate to support the determination that was made."   *Oregon-Cortez*, 244 F. Supp. 2d at 1172 (quoting *United States v. Nelson-Rodriguez*, 319 F.3d 12, 32 (1st Cir. 2003).   If the application and supporting affidavit failed to meet the necessity requirement, the evidence obtained must be suppressed.   *Castillo-Garcia*, 117 F.2d at 1185.   However, the necessity requirement is not an exhaustion requirement, and the government need not "explain its failure to exhaust every *conceivable* investigative procedure before resorting to wiretapping."   *Id.* at 1188 (emphasis in original).   The purpose of the

necessity requirement "is to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.' " *United States v. Edwards*, 69 F.3d 419, 429 (10th Cir. 1995) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)).

In this case, the affidavit outlined several alternative investigative techniques, including physical surveillance, the use of confidential informants and sources, the use of pole cameras, controlled purchases and undercover agents, search warrants, examination of discarded trash, interviews of subjects or grand jury subpoenas, telephone data such as pen registers, trap and trace information, toll records, and precision location information, tracking devices and other location data, and mail covers. (Doc. 234-2 at 2-8; Doc. 234-3 at 1-11).

Defendants argue that the use of alternate investigative procedures (i.e., physical surveillance, the use of confidential sources, pen registers) was prematurely cut off even though the use of these techniques had already resulted in some success; Defendants also provide suggestions about how these traditional methods could have continued to aid the investigation in discovering additional members of the conspiracy.   (Doc. 282 at 18-22, 24-28).   However, even when traditional investigative methods have been somewhat successful, a wiretap may still be necessary.   *See United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000) (finding necessity where investigators had attained some success with traditional investigative methods when physical surveillance, telephone records, and the use of informants revealed that an individual was implicated in drug distribution but did not reveal information about the extended organization).   In this

case, traditional investigative methods had identified two individuals involved in a drug trafficking organization, but these methods had failed to provide information about Simental's suppliers, buyers other than Baca-Rodriguez, or other conspirators.  A finding that wiretapping is necessary under these circumstances is not an abuse of discretion. *See United States v. Milton*, 153 F.3d 891, 895 (8th Cir. 1998); *United States v. Torres*, 908 F.2d 1417, 1422-23 (9th Cir. 1990); *United States v. Newman*, 733 F.2d 1395, 1399 (10th Cir. 1984); *Carrillo*, 123 F. Supp. 2d at 1234.

Defendants' also challenge Judge Herrera's determination of necessity on the grounds that the affidavit did not offer sufficient factual information as to the failure or danger of traditional investigative methods beyond boilerplate phrasing.  (Doc. 282 at 17-282).  However, the mere presence of boilerplate language in an affidavit does not invalidate the necessity determination.  Drug crime is difficult to detect by its nature and the fact that investigations repeatedly face the same difficulties and lack of success with traditional investigative procedures does not conclusively determine that this particular affidavit did not state necessity.  *See Milton*, 153 F.3d at 895.

Importantly, sixteen pages of the affidavit were devoted to explaining how alternative investigative techniques would not result in obtaining information about Simental's suppliers, buyers, or other conspirators.  The affidavit discussed how physical surveillance had been used to observe Simental, Baca-Rodriguez and other associates, but agents could not understand the context of these meetings without electronic surveillance.  (Doc. 234-2 at 2-7).  Moreover, the affidavit detailed counter-surveillance techniques that Simental had used, supporting the contention that the effectiveness of

physical surveillance was limited.   (Doc. 234-2 at 5-6).

The affidavit also explained that the confidential source had been helpful in obtaining some information, but by late October, it appeared that Simental was reluctant to sell drugs to the confidential source.   (Doc. 234-2 at 8).   Simental also indicated that he did not want to conduct any transactions in public locations and pressed the confidential source for information about who the confidential source was purchasing methamphetamine for.   (Doc. 234-3 at 1).   Simental's general guardedness further suggested that attempts to bring an undercover agent into the organization would be unsuccessful.   (Doc. 234-3 at 3).   Additionally, the affidavit explained that the confidential source existed on the fringe of the organization and was unlikely to have direct contact with higher level members.   (Doc. 234-3 at 1).

As explained in the affidavit, searching the residences of Simental and Baca-Rodriguez would likely result in a drug seizure, but would also reveal the investigation into the drug trafficking organization.   (Doc. 234-3 at 4).   The affiant also wrote that searches would be unlikely to reveal the scope of the organization and identities of co-conspirators, which were some of the stated investigative objectives. (Doc. 234-3 at 4-5).   The affidavit also sufficiently explained that a grand jury investigation or interviews with subjects would most likely result in the individuals invoking their Fifth Amendment privilege not to testify.   (Doc. 234-3 at 6-7).   The use of telephone data such as pen registers, trap and trace information, and toll records was discussed in the affidavit.   (Doc. 234-3 at 8).   The affiant sufficiently explained that these records were of limited utility in identifying the parties to and the content of the conversations. Although the Court recognizes that the discussion of these alternative investigative

methods does contain boilerplate language, the application and supporting affidavit, taken in its entirety, adequately demonstrated the necessity of a wiretap to further the stated investigative objectives.   Authorizing the interception of communications over Target Telephone 1 was not an abuse of discretion.

### c. Subsequent Applications

Defendants do not make a specific argument that the subsequent applications on December 21, 2011 and January 5, 2012, failed to provide a basis for probable cause or state necessity.   (Doc. 282 at 28).   They state that the "Court's role is to look at the face of the first affidavit to determine if it is supported by probable cause.   If the first order is tainted, the others must fail as a matter of law." (Doc. 282 at 282).   As this Court found that evidence obtained on the basis of the first order should not be suppressed, it follows that evidence obtained on the basis of subsequent orders must not be suppressed unless there is a separate legal and factual basis for doing so.   Defendants have not argued that there is a separate basis, therefore, the Court does not recommend the suppression of evidence.

### V.     Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that *Defendant Marco Jimenez's Amended Motion to Suppress Evidence Obtained as Fruit of an Illegal Title III Wiretap*, (Doc. 234), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE